IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JESSE R. BRATCHETT, <br> (TDCJ-CID #655960) <br><br> Petitioner, <br><br> VS. <br><br> RICK THALER, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. H-11-1384 <br> § <br> § <br> § <br> § |

**MEMORANDUM AND OPINION**

The petitioner, Jesse R. Bratchett, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a disciplinary conviction at the Holliday Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). He is currently serving an eight-year sentence for a conviction imposed by a state court in San Augustine County, Texas. The respondent filed a motion for summary judgment, (Docket Entry No. 8),[1] and Bratchett filed a response, (Docket Entry No. 10). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons for these rulings are set out below.

**I.    Background**

---

[1] In support of his motion for summary judgment, the respondent provides the following documents: (A) TDCJ-CID computer records concerning Bratchett's conviction; (B) affidavit of Linda Issac with prison disciplinary records for Case Number 20110113207; (C) affidavit of Sandra K. Murphy with Bratchett's grievance records regarding the disciplinary hearing; and (D) excerpts from TDCJ Disciplinary Rules and Procedures for Offenders. The respondent also provides an audio CD recording of the hearing in Case Number 20110113207. (Docket Entry No. 9).

On December 22, 2010, prison officials at the Holliday Unit conducted a hearing in disciplinary Case Number 20110113207. The hearing officer found Bratchett guilty of stealing, a Level 2, Code 17.0 violation. (Docket Entry No. 9, Disciplinary Hearing Record, p. 1). Bratchett's punishment consisted of suspension of contact visitation for 60 days; placement in solitary confinement for 15 days; loss of commissary privileges for 45 days; recreation restrictions for 45 days; reduction in good-time earning class status from line class 1 to L2; and loss of 15 days good-time credit. (*Id.*). Bratchett filed a Step One Grievance on December 27, 2010, which was denied on January 6, 2011. (Docket Entry No. 9, Disciplinary Grievance Record, pp. 1-2). Bratchett filed a Step Two Grievance on January 24, 2011, which was denied on March 10, 2011. (*Id.* at 3-4). On April 8, 2011, this court received Bratchett's federal petition.

The threshold issue is whether Bratchett has stated meritorious grounds for federal habeas relief. The respondent argues that Bratchett's first and third grounds for federal habeas relief are unexhausted and procedurally-barred. The respondent argues that Bratchett's remaining grounds lack merit. The arguments and Bratchett's responses are analyzed below.

## II. The Issue of Exhaustion
(Grounds 1 and 3)

A state prisoner must exhaust available state court remedies before he can obtain federal habeas corpus relief under § 2254 unless there are circumstances that make the state corrective process ineffective to protect the prisoner's rights. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). 28 U.S.C. § 2254(b) and (c) provide in part as follows:

> (b) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B) (i) there is an

absence of available state corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To exhaust, a petitioner must "fairly present" all of his claims to the state court. *Id.; Duncan v. Henry*, 513 U.S. 364, 365 (1995). Full exhaustion of all claims presented is required before federal habeas corpus relief is available. *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982). A claim is not exhausted unless the habeas petitioner provides the highest state court with a "fair opportunity to pass upon the claim," which in turn requires that the petitioner "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999)(quoting *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988)). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998)(citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)). A federal court should dismiss a state prisoner's federal habeas petition if the prisoner has not exhausted available state remedies as to any of his federal claims. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A federal court may raise on its own a petitioner's failure to exhaust state law remedies and apply that doctrine to bar federal litigation of the petitioner's claims until exhaustion is complete. *Magouirk v. Phillips*, 144 F.3d 348, 357 (5th Cir. 1998)(citing *Graham v. Johnson*, 94 F.3d 958, 970 (5th Cir. 1996)).

Texas state courts will not entertain habeas corpus challenges to prison disciplinary proceedings. *Ex parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim. App. 1988). A Texas prisoner

seeking to challenge the outcome of a prison disciplinary hearing in habeas corpus proceedings need exhaust only prison grievance procedures. *See Gartrell v. Gaylor,* 981 F.2d 254, 258 n.3 (5th Cir. 1993); *Baxter v. Estelle,* 614 F.2d 1030, 1031-32 (5th Cir. 1980); *Lerma v. Estelle,* 585 F.2d 1297, 1298 (5th Cir. 1978). In prison disciplinary cases, inmates exhaust their state remedies for the purposes of § 2254 by pursuing the TDCJ-CID's internal grievance procedures. *See Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994).

The Texas Department of Criminal Justice Offender Orientation Handbook provides a two-step procedure for presenting administrative grievances. *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. 2008). Step One requires the prisoner to submit an administrative grievance at the institutional level within fifteen days of the incident. *See Wendell v. Asher,* 162 F.3d 887, 891 (5th Cir. 1998)(overruled by implication on other grounds by *Jones v. Bock,* 549 U.S. 199, 127 S. Ct. 910, 920-21 (2007)). Step Two permits the prisoner to submit an appeal to the division grievance investigation with the TDCJ. *Id.* Generally, prison regulations permit only one grievance to be filed every seven days and only one issue to be raised in each grievance. Courts in this circuit have recognized that resort to the prison grievance process is required in the disciplinary conviction context. *See, e.g., Kimbrell v. Cockrell,* 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies).

The respondent argues that Bratchett failed to raise his first and third grounds for federal habeas relief and that those claims are unexhausted. In his federal petition, Bratchett challenges his disciplinary conviction on the following four grounds:

(1)  Prison officials failed to adhere to prison regulations which required that he be accorded special consideration because he was developmentally disabled and on psychiatric medications;

(2)  Counsel substitute, A. McMillian, gave ineffective assistance because she was operating under a conflict of interest;

(3)  Counsel substitute denied him equal protection; and

(4)  The evidence presented was insufficient to sustain a finding of guilt.

In his Step One Grievance, Bratchett alleged that:

(1)  The evidence was insufficient to support the disciplinary conviction for stealing;

(2)  The hearing officer engaged in unethical behavior by asking Bratchett a question and then improperly ordering Bratchett to stop talking; and

(3)  Counsel substitute rendered ineffective assistance by shaking her head and suggesting that Bratchett was lying.

(Docket Entry No. 9, Disciplinary Grievance Records, pp. 1-2).

In his Step Two Grievance, Bratchett alleged that:

(1)  The hearing officer failed to follow procedures set forth in the Correctional Managed Healthcare Manual for developmentally disabled inmates;

(2)  There was no evidence to support the conviction; and

(3)  The hearing officer and counsel substitute worked together in an unprofessional manner.

(*Id.* at 3-4).

Of the four claims Bratchett presented in his federal petition, he only raised his challenges to the effective assistance of counsel and sufficiency of the evidence, claims two and four, in both his Step One and Step Two Grievances. Bratchett did not present the two remaining claims in both his Step One and Step Two Grievances. The unexhausted claims are that prison officials failed to adhere to prison regulations requiring that he be accorded special consideration because he was developmentally disabled and on psychiatric medications and that counsel substitute denied him equal protection.

A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004). Bratchett failed to present each of his grounds for federal habeas relief in both his Step One and Step Two Grievances. As the respondent notes, it would be futile for Bratchett to file additional grievances to exhaust his state administrative remedies at this late date. (Docket Entry No. 8, Respondent's Motion for Summary Judgment, p. 6). The unexhausted claims, claims 1 and 3, must be dismissed as barred under the doctrine of procedural default. *See Johnson v. Cain,* 215 F.3d 489, 494 (5th Cir. 2000).

## III. Analysis of the Remaining Claims

In *Wolff v. McDonnell,* 418 U.S. 539, 563-66 (1974), the Supreme Court held that the standards governing disciplinary proceedings depended on the sanction imposed and the consequences. A prisoner punished by solitary confinement and loss of good-time credits is entitled to: (1) written notice of the charges against him at least twenty-four hours before the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. When the

punishment has no effect on parole, such as a short period of administrative segregation, an inmate is entitled to notice and an opportunity to present a statement in an informal nonadversary evidentiary review. *Hewitt v. Helms*, 459 U.S. 460 (1983); *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 412 (5th Cir. 1993).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court followed its prior decision in *Wolff*, holding that a State may, under certain circumstances, create liberty interests applicable to prisoners, protected by the Due Process Clause. Such interests are generally limited to state-created regulations or statutes that affect the quantity, rather than the quality, of time a prisoner serves. The Due Process Clause does not protect against every change in the conditions of confinement that has a substantial adverse effect upon a prisoner. *Id.* at 478. A prisoner's loss of good-time credits as a result of a disciplinary conviction, which increases the sentence that would otherwise have resulted from state laws providing mandatory sentence reductions for good behavior, must be accompanied by certain procedural safeguards to satisfy due process. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

To the extent that Bratchett attempts to assert a claim of a denial of due process based on the loss of privileges and placement in solitary confinement, his claims are barred by *Sandin*. In *Sandin*, a prisoner was placed in disciplinary segregation for thirty days, but received no discipline that inevitably affected the duration of his sentence. The Court held that such sanctions did not require the procedural protections set out in *Wolff* and *Hewitt*. In this case, the punishments that Bratchett received -- suspension of contact visits, loss of privileges, and placement in solitary confinement – are not the types of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 486 n.9. The punishment changed the conditions

of Bratchett's confinement, but did not give rise to a due process claim. *Madison*, 104 F.3d at 767-68.

Bratchett may complain that the reduction in his good-time earning class status has delayed his release on parole, creating a due process violation. Prisoners may become eligible for release under Texas law on parole or under a mandatory supervised release program. *See Madison*, 104 F.3d at 768. "Parole" is the "discretionary and conditional release of an eligible prisoner . . . [who] may serve the remainder of his sentence under the supervision and control of the pardons and paroles division." *Id.* "Mandatory supervision" is the "release of an eligible prisoner . . . so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division." *Id.*

Bratchett may argue that as a result of the guilty finding in the disciplinary case, the Texas Board of Pardons and Paroles ("Board") will delay considering his eligibility for release on parole. Bratchett has no constitutional right to parole. *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir. 1995). The Fifth Circuit has expressly held that there is no constitutional expectancy of parole in Texas, *Creel v. Keene,* 928 F.2d 707 (5th Cir. 1991), and no right to be released on parole. *Madison,* 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18, § 8(a)). Because a prisoner has "no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions." *Allison v. Kyle,* 66 F.3d 71, 73-74 (5th Cir. 1995)(citing *Orellana,* 65 F.3d at 32). Any argument by Bratchett that he is entitled to be considered for release on parole at a particular time lacks merit.

Bratchett may argue that if he had remained at the good-time earning status of L1, rather than L2, he would have had an opportunity to earn good-time credits that might have led to an earlier

release on parole. Bratchett did not lose accrued or earned good-conduct time as a result of the reduction in good-time earning class status. Rather, his ability to earn good-time credits was curtailed. Bratchett's diminished ability to earn good-time credits, without more, does not rise to a deprivation of a constitutionally cognizable liberty interest. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996)("the mere opportunity to earn good-time credits" does not constitute a "constitutionally cognizable liberty interest sufficient to trigger the protection of the due process clause"). The possibility that an inmate's good-time earning status will affect the timing of his release is considered too speculative to afford a constitutionally cognizable right to a particular time-earning status. *Id.* Such speculative, collateral consequences of the prison disciplinary decision do not create a constitutionally protected liberty interest. *Id.* Mandatory supervision is "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5)[2]

Construed liberally, Bratchett complains of the delay in his release to mandatory supervision. Bratchett is eligible for release to mandatory supervision for his sentence for delivery of a controlled substance. (Docket Entry No. 8, Respondent's Motion for Summary Judgment, Ex. A, p. 2).

---

[2] This early-release provision was "mandatory" because before September 1, 1996, once a prisoner's actual time served plus his accrued good-time credit equaled his prison sentence, the inmate had a right to release "based solely on simple arithmetic." *Teague v. Quarterman*, 482 F.3d 769, 775 (5th Cir. 2007). Under the post-September 1, 1996 scheme, a new section allows the parole panel a "modicum of discretion," *Teague*, 482 F.3d at 774, to deny release if it determines that "(1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." TEX. GOV'T CODE § 508.149(b). The Fifth Circuit has described this new scheme as "mandatory in large part, but also discretionary in small part." *Teague*, 482 F.3d at 775. Both the Fifth Circuit and the Texas courts have held that the post-September 1, 1996 mandatory provision scheme creates a protected liberty interest. *Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007); *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Bratchett lost 15 days of good-time credits. When a State creates a right to time credit for good conduct, and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557). Bratchett had a protected liberty interest in his previously earned good-time credits. *See Teague v. Quarterman*, 482 F.3d 769, 775-76 (5th Cir. 2007) (citing *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000)). Because Bratchett had a liberty interest in good-time credit accrued toward his potential early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). As set out below, Bratchett received the process he was due.

The record shows that Bratchett was assigned to work as a janitor in the G-Building 2A. (Docket Entry No. 9, Disciplinary Hearing Record, p. 6). On December 17, 2010, Captain Giddens had installed a video camera inside the counsel-substitute office, facing toward a box outside the office. The box was used for supervisors to place I-210 minor court offenses after hours. The offense report states that on December 20, 2010, at 4:00 p.m., in the G-Building hallway, Bratchett attempted to steal disciplinary reports, which were State property. The video showed Bratchett making six different attempts during the night to remove the contents of the box. (*Id.*). Bratchett used his eyeglasses to try to remove the contents of the box. (*Id.* at 6).

On December 20, 2010, Captain Giddens charged Bratchett with stealing disciplinary reports belonging to the State. Bratchett received notification of the charge on December 21, 2010, at 9:20 a.m. (*Id.* at 1). Bratchett elected to have a counsel substitute represent him. (*Id.* at 1). Counsel substitute, McMillian, interviewed Bratchett. Bratchett told McMillian that he was trying to clean out the candy bars and wrappers in the box. In her prehearing investigation, McMillian interviewed Captain Giddens, who stated that Bratchett made six attempts to remove disciplinary reports from the disciplinary report box, using his eyeglasses to "fish cases out of the box." (*Id.* at 5).

Captain Esquivel conducted the disciplinary hearing on December 22, 2010. (*Id.* at 1). Counsel substitute represented Bratchett at the hearing. Bratchett was present during the hearing. (*Id.* at 1). Captain Giddens testified that he had installed a video camera facing the disciplinary report box. The videotape showed Bratchett using his eyeglasses to extract disciplinary reports from the wooden box. Bratchett testified that he was trying to remove candy bars and wrappings from the box. He stated that he did not have a disciplinary report in the box.

In finding Bratchett guilty of the charged offense, Captain Esquivel considered the officer's report and the live testimony of the charging officer. In imposing punishment, Captain Esquivel noted that the offense posed a serious threaten to institutional security. (*Id.* at 1). Bratchett could not sign the disciplinary hearing report to acknowledge that he had received a copy of the final report because he was in restraints. (*Id.* at 1).

Bratchett had notice of the charges and the opportunity to make a statement at the hearing. Bratchett was able to question the charging officer, and this officer did testify at the hearing. The record reflects that counsel substitute investigated and presented the results of that investigation in the disciplinary hearing. Bratchett received a written statement by the fact finder of the evidence and

the reason for the disciplinary action. Bratchett has not shown a due process violation that would support the relief he seeks. *See Wolff,* 418 U.S. at 563-66. His claim is without merit.

## V. The Remaining Due Process Claims
(Grounds 2 and 4)

### A. The Insufficiency of the Evidence Claim

In his fourth ground for habeas review, Bratchett complains that the evidence was insufficient to support the hearing officer's finding of guilt. The record does not support this claim.

In reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais,* 659 F.2d 539, 545 (1981)(citing *Thomas v. Estelle,* 603 F.2d 488, 490 (5th Cir. 1979)). "The findings of a prison disciplinary hearing will not be disturbed unless they are arbitrary and capricious." *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir. 1995). "[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). If there are "some facts" or "any evidence at all" that supports the action taken by prison officials, the decision must be upheld on federal habeas review. *See Banuelos,* 41 F.3d at 234; *Gibbs,* 779 F.2d at 1044; *Smith,* 659 F.2d at 545; *see also Black v. Warren,* 134 F.3d at 734 (5th Cir. 1998); *Sweeney,* 113 F.3d 732, 734 (5th Cir. 1998).

Applying this standard defeats Bratchett's complaint of insufficient evidence. Bratchett states that he was performing his duties as a support service inmate trying to remove the candy bars and candy wrappers from the locked wooden box. (Docket Entry No. 10, Petitioner's Response, p. 2). Because the candy bars cost money, Bratchett reasoned that no inmate intentionally placed them

12

in the box. Bratchett states that he knew that an officer must have put the candy bars in the box. Bratchett asserts that Lieutenant Burnell, Sergeant Foxwork, Officer Owen, and Sergeant Garga knew that the wooden box contained candy bars. (*Id.* at 2).

As noted, Captain Giddens, the charging officer, testified at the hearing by telephone that he observed video surveillance showing Bratchett trying repeatedly to remove disciplinary reports from the box, using his eyeglasses as a tool. Bratchett was present at the hearing, with counsel substitute, who questioned the charging officer. On cross-examination, counsel substitute asked the charging officer if it was possible that Bratchett had been cleaning out the box. (Docket Entry No. 10, Disciplinary Hearing Record, p. 3). The charging officer responded, "no." Bratchett was able to present his account of events. The hearing officer found Bratchett guilty based on the charging officer's report and the charging officer's live testimony. Bratchett has not shown that the disciplinary hearing officer acted arbitrarily or capriciously. There was evidence to support the hearing officer's finding of guilt.

In his second ground for federal habeas relief, Bratchett alleges that counsel substitute rendered ineffective assistance and was operating under a conflict of interest because she worked for the prison's disciplinary office. He alleges that she did not act as his advocate during the hearing.

An inmate does not have a right to either retained or appointed counsel in a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976). Because an inmate has no constitutional right to the assistance of counsel substitute, he cannot claim a right to habeas relief based on counsel substitute's performance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel, no deprivation of ineffective assistance). Bratchett is not entitled to habeas relief on this claim.

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The pleadings and prison records show that Bratchett's federal petition fails to state a ground for habeas relief. Bratchett is not entitled to habeas relief on the claims he raises in this case.

## VI. Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 8), is granted. Bratchett's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

The showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000). When a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. 484.

This court has denied Bratchett's petition after careful consideration of the merits of his constitutional claims. A Certificate of Appealability is denied because Bratchett has not made the necessary showing for issuance.

SIGNED on February 1, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge